(Decided March 26th, 1863.)

---

JOSEPH H. STICKNEY & HENRY C. REED, *vs.* MOHLER, GRAFF & CO., ET AL.

M., G. & Co. became the drawers of three promissory notes, in favor of L., which they loaned to him, and all of which were discounted for L. by the Chesapeake Bank, M., G. & Co. receiving at the time from L. his two notes of even date with two of said notes for the same sums, and payable when said two notes were payable. The two notes of L. were discounted for M., G. & Co., by the Fells Point Savings Institution, and L. failing at maturity to pay them, they were taken up and paid by M., G. & Co. Real estate of L. having been sold under a decree for the payment of a mortgage debt due to said bank for other notes discounted for him, M., G. & Co., by supplemental bill, asked to be subrogated to the rights of the bank under their said mortgage, as to the surplus of net proceeds of sale after payment of said mortgage debt, for the amount of the *three notes* loaned to L.; S. & Co. also claimed said surplus as second mortgagees of the real estate sold. HELD:

1. That the notes loaned by M., G. & Co. to L., cannot be regarded as accommodation notes, creating the relation of principal and surety.

2. Where there is mutual accommodation with specific exchange, each party is bound to pay his or their own notes, and in paying them cannot be considered surety for the other.

3. That the aforesaid surplus of net proceeds should be applied to the payment of the mortgage debt of S. & Co.

4. It appearing that the third note, for $825, alleged to have been loaned by M., G. & Co. to said L., was obtained for value, in a strictly business transaction, the claim of M., G. & Co., as to said note, was properly disallowed in the Court below.

Stickney & Co., *vs.* Mohler, Graff & Co., *et al.*

APPEAL from the Circuit Court for Baltimore city.

The original petition in this cause was filed by the Chesapeake Bank, on the 21st of January 1856, in the Circuit Court for Baltimore city, for the sale, under the Act of 1833, ch. 181, of certain mortgaged premises, in pursuance of a mortgage from Henry D. Lawrence to said bank, dated March the 13th, 1855, therein recited. A supplemental petition was filed by the bank on the 2nd of December following. The allegations of these petitions, and the import and substance of the further proceedings in the cause, are so fully stated in the opinion of this Court, as to render any extended statement of the proceedings, here, unnecessary.

On the 10th of February 1857, a petition was filed in the cause by J. H. Stickney & Co., the appellants, reciting a mortgage by Lawrence to that firm, dated December 3rd, 1856, of the same property covered by the bank's mortgage, to secure certain notes of Lawrence due them in January and April 1856, amounting to $2,930.25; the consideration of said mortgage as stated, being that Lawrence had been sued on said notes by Stickney & Co., and that they had agreed to forbear proceedings until March 15th, 1857.

The petition further recites the proceedings up to the sale, under the bank's petition, the death of Lawrence, and the appointment of Hugh Lawrence and Edward Mohler as his administrators, and claims the benefit of the bank's decree and the allowance to the petitioners as second mortgagees of the surplus of proceeds of sale, after payment of the bank's claim.

This petition was set down for hearing on 21st February 1857, but on 13th February 1857, a supplemental bill was filed in the cause by Mohler, Graff & Co., reciting the mortgage by Lawrence to the bank, and alleging that, at the request of Lawrence, and for his accommodation, they

became the drawers of three certain promissory notes in his favor, viz.: One for $1,560.75, dated 12th July 1855, payable six months after date; one for $825, dated 21st August 1855, payable six months after date; and one for $1,000.75, dated 25th November 1855, payable four months after date; all of which were discounted by the bank for the use of Lawrence. That he represented to them that these notes were to be discounted by the bank, under the security of its mortgage, and that they loaned them accordingly. That they took for the first and third notes, exchange notes of Lawrence, but that for the second they took none; that they refused to pay the notes at maturity, because the bank had security; that the bank did not, however, proceed upon its security, but sued the petitioners, and obtained two judgments, one on the first note, and another on the second and third notes, and that they paid those judgments under threats of execution; that they claimed thereupon an assignment *pro tanto* of the bank's mortgage, which was refused on the ground "that there were other unpaid claims of the bank against Lawrence, and that until they were paid, the bank could do nothing."

They recite, further, the mortgage from Lawrence to Stickney & Co., and a subsequent deed of trust, dated 27th December 1856, by Lawrence to W. J. Ward, for the benefit of creditors. They then claim, as sureties of Lawrence on the three notes aforesaid, to be subrogated to the bank's securities, and allege that Stickney & Co. knew of their being sureties on said notes, and of their right and claim to be so subrogated; and that Stickney & Co. took their mortgage for the purpose of defeating that right. They pray, therefore, for an allowance to them out of the surplus of proceeds of sale (after payment of the bank's claim) of the amount of said three notes, and interest, &c.

On March 17th, 1857, Stickney & Co. answer the petition or bill of Mohler, Graff & Co., and though admitting

that the three notes referred to in that petition are the notes of Mohler, Graff & Co., they deny any knowledge of the consideration of said notes, or whether they were, in fact or law, accommodation notes, and put the petitioners. on proof of the same.

They further deny, that at the time of the execution of the mortgage to them, (Stickney & Co.,) they or either of them knew that Mohler, Graff & Co. had loaned the notes in question to Lawrence, or that they had been discounted by the bank for Lawrence's use, on the faith of the mortgage, or that Mohler, Graff & Co. had paid said notes as sureties of Lawrence, or that they had any right to be substituted to the bank, or that they (Stickney & Co.) took their mortgage for the purpose of depriving Mohler, Graff & Co. of any rights.

The answer of Wm. J. Ward, trustee of Lawrence & Mohler, administrators of Lawrence, and of the Chesapeake Bank, were all filed; but they are formal merely, making no claim to the fund in controversy, and submitting the matter to the Court.

The auditor's report and account exhibits a fund in Court of $3,513.42, after payment of costs and the bank's. claim of $8,500 and interest, which is claimed on the one hand by Stickney & Co. as second mortgagees, and on the other by Mohler, Graff & Co., as alleged sureties of Lawrence, claiming rights of subrogation.

Under a commission, evidence was taken on the part of both claimants of the fund. Upon the question of the consideration of the three notes, alleged by them to be accommodation notes, Mohler, Graff & Co. proved by one of the directors of said bank, that the notes were discounted by the bank for Lawrence's use; that "at the time of the discount, the witness, as well as the bank, looked on them as business notes; but witness afterwards changed his

opinion, as after the discount Lawrence told him they were loaned notes.''

Upon this point, Stickney & Co. proved by the book-keeper of Lawrence, that the notes for $1,560.75, and $1,000.75, were exchanged between Mohler, Graff & Co. and Lawrence, for the accommodation of Mohler, Graff & Co.; that in 1853, Mohler brought his note for $1,000.75 to Lawrence, and exchanged it for one of Lawrence's of like amount, and that this note, as well as other exchange notes, were renewed from time to time; that the renewals were all entered on Lawrence's books, each and every one as it matured; that he was Lawrence's clerk up to the time of his death, and heard him frequently say that the notes were renewed from time to time, for the accommodation of Mohler, Graff & Co.; that the note for $825 was a real note, the consideration being a note of Wm. Mason & Son, belonging to Lawrence, by him transferred to Mohler, Graff & Co., and paid by Mason & Son. Stickney & Co. further proved on this point, by another witness, that he had frequent conversations with Lawrence on the subject of the notes, who invariably said that the notes were given for the accommodation of Mohler, Graff & Co.; and also proved by the books of Lawrence, in his account with Mohler from 1852, that Mohler was charged, on the 17th of September 1854, with Mason & Son's note for $806.75, and credited, September 18th, with Mohler, Graff & Co's note for $825. Stickney & Co. also relied on admissions of counsel, that Mohler, Graff & Co. used Lawrence's notes for $1,560.75 and 1,000.75, by having them discounted for their, Mohler, Graff & Co's, own use, in the Fells Point Savings Institution, where they paid them; and further proved that they used Mason & Son's note for $806.75 in the same manner, by having it discounted for their use at the Fells Point Savings Institution, and that it was paid there by Mason & Son, at maturity.

In reference to the claim of Mohler, Graff & Co., to be secured by the bank's mortgage, and to the alleged knowledge of Stickney & Co. of such claim, and of the claim of the former, that the notes in question were accommodation notes, evidence was offered by them that, at a meeting of the creditors of Lawrence, Mohler, Stickney and Reed were all present when Mohler publicly alleged that his claim was secured under the bank's mortgage, and that Stickney & Co. were told of Mohler's claim to be secured under said mortgage.

On the other hand, the book-keeper of Lawrence testified that he never heard of any agreement to include the notes in the security of the bank's mortgage; but that he heard Lawrence say, that Mohler's effort was to bring them under that mortgage, but that he would resist it all in his power. And another witness proved that he was told by Mohler, Graff & Co. that they could claim under the mortgage, but that they did not say that there was any agreement to that effect, which led the witness to make enquiries of Lawrence, who invariably denied that there was any such agreement, saying that they were not secured for one dollar; that he would resist the claim with all his power; that the mortgage was given to secure discounts the bank might give him, and not to secure notes given for Mohler's accommodation.

Exceptions were filed on behalf of Mohler, Graff & Co., to all evidence of the declarations of Lawrence, except such as were proved by the exceptants, and to all evidence derived from his book. Stickney & Co. also excepted to the declarations of Lawrence, offered on the other side, and insisted that "if the declarations of said Lawrence, offered in evidence by Mohler, Graff & Co., were admissible, that the declarations of the same party, touching the same subject matter as offered in evidence by Stickney & Co., are made admissible in their behalf."

The Court below, at the hearing, decided that the note of $825 was not an accommodation, but a real note, which Mohler, Graff & Co. were bound to pay. That the two notes of $1,560.75 and $1,000.75, were accommodation notes, and that Mohler, Graff & Co. paid them as sureties of Lawrence. That they were discounted by the bank upon the faith of the mortgage; and that, the bank being fully paid, Mohler, Graff & Co., as sureties, were entitled to be subrogated to the security of the mortgage, in preference to the claim of Stickney & Co., as second mortgagees of the fund.

From this decree Stickney & Co. appealed.

The cause was argued before BOWIE, C. J., and GOLDSBOROUGH and COCHRAN, J.

*Wm. F. Frick,* for the appellants:

I. The burden of proof is upon Mohler, Graff & Co., to show that the notes in question were accommodation notes. To meet this, they offer only the declaration of Lawrence to Mowell, that "they were loaned notes." This declaration is inadmissible against Stickney & Co., unless they had knowledge of it before they took their mortgage; and of that, there is no proof. If this objection be well taken, it covers the whole case.

If, however, the evidence be admissible, all the declarations of Lawrence, touching the same subject matter, as offered by Stickney & Co., are likewise made so. The whole of his statements are to be taken together. Mohler, Graff & Co. have no right, if they rely on Lawrence's declarations, to exclude such as make against them. It is for the Court to determine, under all the circumstances, how much and what portion of the whole they deem worthy of belief. *Greenleaf's Evidence, Vol.* 1, *secs.* 189, 190, 191, 201.

II. Upon the whole of the statements of Lawrence, taken together, (and independent of these, upon the other proofs in the case, offered by Stickney & Co.,) it is clear that neither of the three notes in question were accommodation notes, in such a sense as to make Mohler, Graff & Co. the sureties of Lawrence upon them.

An accommodation bill, is one to which the acceptor, drawer or endorser, as the case may be, has put his name without consideration, for the purpose of accommodating some other party, who is bound to provide for the bill when due. If the accommodation acceptor, drawer or endorser is compelled to take up the bill, he is regarded as a surety for the other party. Bills for the mutual accommodation of parties, are where both the drawer and endorser are to be equally benefitted by the discount of them; and this may be either with or without a specific exchange of securities. If without, each party is bound to provide for one-half of the bill when due, and either party paying the whole, is surety for the other for one-half. But "mutual accommodation with specific exchange," is when the bill of A is exchanged for the bill of B to the same amount. In *this* case, each party is bound to pay his own bill, and in paying it, is not considered as surety for the other. Nor is it essential, in order to constitute a specific exchange of securities, that the bills given in exchange should be the bills of the party giving them, nor that the amounts or dates should be exactly the same. *Byles on Bills, Am. Ed.* 1853, *marg. pages* 100, 363, 364, 365.

III. If, however, Mohler, Graff & Co. must be regarded as sureties of Lawrence upon their notes held by the bank, they were not entitled to claim an assignment of the bank's mortgage, until the debt secured by it was fully paid; and this equity did not arise until the payment of the debt by the sale of the property, which was after Stickney & Co's claim as second mortgagees intervened. Stickney & Co.

have then both the legal estate and prior equity, and their lien on the fund must therefore prevail over that of Mohler, Graff & Co.

The equity of the surety to demand an assignment of the securities held by the creditor, does not arise upon his payment of a part only of the principal's debt, nor does partial payment work an assignment by operation of law. The Courts of this State have refused to countenance such an anomaly as a *pro tanto* assignment, the effect of which would necessarily be to give distinct and conflicting interests in the same security to the creditor and surety. *Hollingsworth vs. Floyd*, 2 *H. & G.*, 87. Chancellor's opinion in *Swan vs. Patterson*, 7 *Md. Rep.*, 166, 167.

And even if partial payment by a surety could be regarded as creating an inchoate equity, which might ripen into a right to assignment of the securities, on subsequent payment in full of the creditor, that would be only as against the principal. The existence of a right to that extent was established by the case of *Union Bank vs. Edwards*, 1 *G. & J.*, 365. The Court say: "If, after satisfying all debts due to the Union Bank, on Stansbury's notes by them discounted, there should be a surplus of the mortgage fund, to that the drawers and endorsers of his accommodation notes, who had made payments to the bank, might seek to be substituted." But in *Swan vs. Patterson*, 7 *Md. Rep.*, 176, where there was a second mortgage in a like case, the Court refused to apply the principle as laid down in *Union Bank vs. Edwards*, on the ground that the rule applied to "parties in the predicament of Mrs. Edwards (the surety) and her debtor, and not when there is a junior incumbrancer claiming the surplus after payment of the first mortgage."

This limitation of the surety's right to substitution, grows out of the nature of his equity. It is not founded on contract, but on principles of natural justice, as between

the principal and surety, which make it unconscientious in the former to claim a return of the securities to himself, without reimbursing the latter. But it cannot override the claims of subsequent *bona fide* purchasers for value. Besides, there is another recognized principle of equity, which controls the rights of the surety, when the claims of third parties intervene. When there are two funds and two creditors, and one creditor may resort to both funds, and the other to one only, the latter may require the former first to exhaust the fund on which the latter has no lien, or he may be subrogated to the lien of the former on that fund, in case the other has been already exhausted. *Story's Eq. Jur.*, Vol. 1, secs. 421, *a*, 449, *a*, *b*, *c*, *d*. *Williams vs. Owen*, 13 *Simons' Rep.*, 597. Same case, *Am. Ed. Eng. Ch. Rep.*, Vol. 36, *p.* 597.

IV. There is this further objection to the claim of Mohler, Graff & Co., that upon payment of their two notes of $1,560.75 and $1,000.75, they took no proceeding to reach the mortgage security in the hands of the bank, until after the second mortgage to Stickney & Co. had been executed, and claimed against the fund in this case; but treating their cause of action as founded upon Lawrence's note in their favor, and not upon their own notes held by the bank, they sued Lawrence, and obtained a judgment upon the former notes and others; and so obtaining the lien of a judgment and *fi. fa.*, they realized $2,072.77, net. This course of proceeding must be regarded either as an admission on the part of Mohler, Graff & Co., that they had no right of action against Lawrence upon the notes discounted by the bank for his use, and therefore no equitable claim upon the bank's securities for those notes, or as the exercise of an election on their part, to forego such equity, if they ever had one, and resort to their legal remedies against Lawrence and his unincumbered property, upon his notes in their favor. In either point of view, they are concluded

from setting up, now, their claim to the mortgage fund, on the ground of Lawrence's obligation to pay the mortgage notes, inasmuch as they clearly had no right to a double claim against Lawrence; that is, upon both sets of notes.

V. But even if this view were not correct, and Mohler, Graff & Co. can be regarded as entitled to *both* securities, that is to say, to the mortgage security on certain lands, and the judgment security on other property, the case is brought within the principle, (referred to for another purpose in point III,) that having two funds to look to, and Stickney & Co. but one, they (Mohler, Graff & Co.) must be required, if they seek payment out of Stickney & Co's fund, to substitute Stickney & Co. to their lien upon the other fund.

It is clear, in any view of the case, that Mohler, Graff & Co. have no right to apply the payment under the *fi. fa.* as they may elect. The right of the creditor to appropriate the payment by the debtor to one or another item of account, has reference only to cases of voluntary payment. It has never been and cannot be, on principle, applied to a payment by process of law, or *in invitum.* In a case like this, where various notes have been consolidated in one security, and the interests of third parties require a partial payment by process of law to be legally appropriated, the rule is to apply the sum so paid rateably, *pro tanto,* in discharge of the different notes. *Blackstone Bank vs. Hill,* 10 *Pickering,* 133.

In the best aspect of the case, therefore, for Mohler, Graff & Co., they must credit the two notes of $1,560.75 and $1,000.75, by their rateable portion of the proceeds of the *fi. fa.* This, however, is upon the supposition that Stickney & Co. have not the right, on the ground of substitution, to insist that those entire proceeds shall be applied in exoneration of the mortgaged property from the claim of

Mohler, Graff & Co.; for which, under this point, they will contend.

*Wm. Schley* and *E. Wyatt Blanchard*, for the appellees:

What are the respective positions of the contending parties in this cause? Stickney & Co. claim as second mortgagees, a dry legal title, Mohler, Graff & Co. an equitable right, to stand in the place of the first mortgagor, having paid the debt of Lawrence. The *onus* of proving a *bona fide* consideration without notice, is upon Stickney & Co.; they must show there was nothing to put them on inquiry. The mortgage was constructive notice, and he should have applied to the bank. On the 21st January 1856, a decree passed at the instance of the bank, of which he should have taken notice. The protest showed that Mohler, Graff & Co. had refused to pay the note, because it was a loaned note.

Can Stickney & Co. come into Court and ask to be considered *bona fide* purchasers without notice? The recorded mortgage was notice of its execution to all the world, as well as of the extent of its security. The bank had sued Mohler, Graff & Co., and obtained judgment, and on the 2nd of December the judgment had been paid and entered "satisfied." On the 10th of September, a judgment by default had been obtained by Mohler, Graff & Co., against H. D. Lawrence, and on the 5th of December, it was stricken out, and a new judgment entered. This would not have been done, if they had been aware of the subsequent mortgage to Stickney & Co.

On the 3rd of December, Stickney & Co. knew that the matter was in equity, the first mortgage executed, and the judgment by default entered, and with this knowledge took the mortgage under which they claim.

No one can convey a better right than he himself has. There are cases governed by the rules of common law which

are exceptions, but it is otherwise, unless special circum-
stances can be brought to bear in cases of real estate.  H.
D. Lawrence could convey nothing more than he himself
held on the 3rd of December 1856.  *Le Neve vs. Le Neve*, 2
*White & Tud. Lead. Ca.*, 130 to 133, *note*.  Stickney &
Co., at the date last mentioned, had notice of the judg-
ment, the decree, and that Mohler, Graff & Co. considered
the note a loaned note.

In January 1856, Lawrence failed.  At the meeting in
the following April, he sought an extension.  E. Mohler
and Stickney were present.  E. Mohler said, publicly, that
his claims were secured by the mortgage, and objected to
the extension.

If the original mortgage had become forfeited, what was
before a security became an estate, and the mortgagor has
only an equity of redemption.  Lawrence, on the 3rd of
December, could not have redeemed without paying the
balance due the bank, and re-paying to Mohler, Graff &
Co. the amount paid by them to the bank.  2 *White &
Tud. Lead. Ca.*, part 2, *t. p.* 283, 284.  There is a dis-
tinction between principal and surety in such cases, viz.:
that although between the principal and the creditor you
cannot vary the rights of the parties, between the surety
and the creditor the rights of the parties may be varied by
certain equitable circumstances, by parol.  This is not the
law of Maryland, in cases at law.  *Clopper vs. Union
Bank*, 7 *H. & J.*, 92; but it is otherwise in the Courts of
Equity.  The bank could not have consented to the redemp-
tion by Stickney & Reed on the 3rd of December, without
protecting the rights of Mohler, Graff & Co.

In the case of *Swan vs. Patterson*, 7 *Md. Rep.*, 176,
Swan was not an original surety, and could not have been
compelled to pay the debt.  A surety, by paying in part,
has an equitable inchoate right, which does not become a

complete right of subrogation until payment in full. *Grove vs. Brien*, 1 *Md. Rep.*, 454. The accommodation drawer is considered a surety, but not entitled to subrogation without full payment to prior creditors.

The question, whether Mohler, Graff & Co. were principal creditors, or accommodation drawers, entitled to payment in full before redemption could be made, depends entirely upon the evidence in the cause. The declarations of Lawrence against his interest, and made long prior to his mortgage to Stickney, are evidence as against Stickney as his privy in estate, independently of the actual knowledge brought home to him,—that his declarations afterwards, to defeat Mohler, Graff & Co., are not evidence,— he stands effected with actual knowledge of the right of appellants to be subrogated to the rights of the bank.

The notes were loaned notes, paid by Mohler, Graff & Co., as sureties, and consequently they are entitled to be subrogated to the rights of the bank to the extent of their payments. *Union Bank vs. Edwards*, 1 *G. & J.*, 365. *Grove vs. Brien*, 1 *Md. Rep.*, 454. *Swan vs. Patterson*, 7 *Md. Rep.*, 164. 1 *Story's Eq.*, sec. 499. *Williams vs. Banks*, 11 *Md. Rep.*, 234. As to Lawrence's declaration against his interest binding those claiming under him, see *Keener vs. Kauffman*, 16 *Md. Rep.*, 308. See also, *Buckler vs. Buttivant*, 3 *East.*, 79. *Bailey on Bills*, 465.

GOLDSBOROUGH, J., delivered the opinion of this Court:

Henry D. Lawrence, of the city of Baltimore, being desirous of obtaining certain loans from the Chesapeake Bank, the bank agreed to loan him the sum of fifteen thousand dollars, by discounting for him, from time to time, promissory notes or bills of exchange drawn by himself, or by others and endorsed by him, to an amount not exceeding at any one time the amount aforesaid. Such

discounts to be granted at any and all times within two years from the date of the agreement.

To secure the payment of these loans, Lawrence, on the 13th day of May 1855, executed to the bank a mortgage, conveying all the property mentioned therein. The mortgage contains the assent of Lawrence to the passing of a decree by the Superior Court of Baltimore city, or the Circuit Court for Baltimore city, for the sale of the mortgaged property at any time after default shall have been made in payment of the debt secured by the mortgage, or any part thereof, in accordance with the provisions of the Act of 1833, ch. 181.

The bank filed its petition in the Circuit Court, on the 21st day of January 1856, alleging the facts heretofore stated, and which are set out in the mortgage. That in pursuance of the terms of the mortgage, and upon the faith of the security thereof, the bank discounted, for the use and accommodation of Lawrence, a promissory note made by Mohler, Graff & Co., for $1,560.75, drawn to the order of Lawrence, and endorsed by him, and gave him the net proceeds thereof. That this note, when it matured, was not paid by the makers; that it was regularly protested, and that Lawrence also failed to pay it. Thereafter, the bank filed a supplemental petition, in which it is stated that Mohler, Graff & Co. had paid the note re-referred to in the original petition, and by an order of Court they had leave to withdraw the note. The bank thereupon filed with their petition three several notes of Lawrence's, due and owing, amounting to the sum of $8,500, with an affidavit that no part thereof had been paid.

Upon the original and supplemental petitions of the bank, the Circuit Court passed a decree for the sale of the mortgaged premises, and appointed George H. Williams

trustee to sell the property, who sold the same for the amount specified in his report.

The trustee's report was finally ratified and confirmed, and the cause referred to the auditor to state an account. The auditor, after deducting the expenses of suit and trustee's commissions, appropriated the fund to the payment of the three notes filed by the bank, and the interest thereon, principal and interest amounting to $8,536.66, which left a balance of $3,513.42 subject to the further order of the Court.

This last named sum is claimed on the one hand by the appellants, Stickney & Co., as second mortgagees, under a mortgage from Lawrence, and on the other hand by Mohler, Graff & Co., as alleged sureties of Lawrence, claiming by subrogation under the mortgage of Lawrence to the Chesapeake Bank.

At the final hearing, the Circuit Court allowed to Mohler, Graff & Co. the amount of the note for $1,560.75, and also that for $1,000.75. From this part of the decree the appellants appealed. The Court disallowed the claim of Mohler, Graff & Co. for the note of $825, and from this part of the decree they appealed.

In reviewing the action of the Circuit Court upon these conflicting claims, we deem it proper to examine and decide upon the relation which existed between Henry D. Lawrence and Mohler, Graff & Co., at the time when the last named parties gave to Lawrence their several promissory notes, and which, being endorsed by him, he had discounted in the Chesapeake Bank, and obtained the proceeds thereof.

The proposition insisted on by the appellees, that these were accommodation notes, would meet the approbation of this Court if they were shown to have been executed without equivalent or consideration; for, in that case, the rela-

64     v.19

tion of principal and surety would arise, and the appellees, by their payment of them to the Chesapeake Bank, as the endorsee of Lawrence, would acquire a clear right to be subrogated to that extent to the security of the mortgage from Lawrence to the bank.

But we find, by reference to the supplemental bill filed by the appellees, they admit that as to the note for "$1,560.75, and the note for $1,000.75, they received from Lawrence his notes of even date for the same sums, and payable at the same times respectively" as the notes they loaned to Lawrence.

It is admitted by the parties, that these last mentioned notes were both discounted by the Fells Point Savings Institution, for the appellees, and Lawrence failing to pay them, they were taken up and paid by the appellees.

As to the note for $825, alleged to have been loaned by the appellees to Lawrence, and which, with the others, he procured to be discounted in the Chesapeake Bank, it is, in our opinion, conclusively shown by the evidence that Lawrence obtained this note from Mohler, Graff & Co. for value, and that it was a strictly business transaction.

The remaining question for us to determine, as to the other two notes alleged to be loaned by Mohler, Graff & Co. to Lawrence, is, were they accommodations, creating the relation of principal and surety? We cannot so regard them, in view of all the circumstances of this case. We think that the transaction brings it within that class of cases where there is mutual accommodation with specific exchange; that the appellees exchanged their notes for Lawrence's notes, and each party was bound to pay his or their own notes, and, in paying them, is not considered as surety for the other. See *Byles on Bills, Am. Ed.* 1856, *pages* 364, 365 and 366.

Recurring to the acts of Mohler, Graff & Co., and Lawrence, as confirmatory of the view above expressed, we find

that upon the failure of Lawrence to pay his notes discounted in the Fells Point Savings Institution, and after they were paid by the appellees, they so far regarded these notes as their property that they embraced them in their suit against Lawrence, these notes constituting more than one-third of the causes of action on which the judgment was rendered; and that they issued an execution on their judgment, and realized $2,072.77, more than one-third of which was applicable to these notes. And if they failed to receive a full equivalent for their notes given to Lawrence, it was another instance of the vicissitudes of mercantile life, and the loss must be borne by them.

If the appellees were gratified in their application to be regarded as sureties of Lawrence, and subrogated to the rights of the bank under Lawrence's mortgage, they would be reimbursed not only in full for the three notes discounted in the Chesapeake Bank, but they will also have received the amount of the note of Mason & Son, and nearly $700 on the two notes of Lawrence, included in their judgment, amounting in the aggregate to upwards of $1,500, for which Lawrence received no equivalent whatever.

Entertaining these views of this case, we are of opinion that the Circuit Court properly disallowed the appellees' claim for the note of $825, but erred in allowing the two notes, one for $1,560.75, and the other for $1,000.75; and that the appellants, Stickney and Reed, are entitled, by virtue of their mortgage, (it embracing the same property as the one given to the bank,) to be allowed the amount of their mortgage claim, and that the balance arising under the trustee's sale, and now subject to the further order of the Circuit Court, or so much thereof as may be necessary therefor, should be applied to the payment of the appellants' claim.

The decree of the Circuit Court, so far as the same is involved in this appeal, must be reversed, with costs to the

appellants, and the cause remanded, that an account may be stated in conformity with the views entertained and expressed by this Court.

> *Decree reversed, with costs to the appellants, and*
> *Cause remanded for further proceedings.*

(Decided February 17th, 1863.)